Richardson, J.,
delivered the opinion of the court:
This is an action against the District of Columbia, under the act of June 16, 1880, ch. 243, upon forty-eight sewer or sewerage certificates, with one hundred coupons attached or belonging to them, issued by the late board of public works.
The origin of the class of certificates of which those of the claimant form a part, and the legislative and Congressional action in relation to them are these:
By the Act February 21,1871 (16 Stat. L., 419, ch. 62), Congress created a government for the whole District of Columbia, to supersede the corporations of the cities of Washington and Georgetown, and the levy court, which up to that time had jurisdiction in the remaining part of the District, called the county of Washington.
This act, besides providing for a Governor, Delegate in Congress, and other public officers, created also a legislative assembly, consisting of a council and a house of delegates with limited powers, and a board of public works.
*115 In relation to this board the act provided in section 7 as follows:
“The board of public works shall have entire control of and make all regulations which they shall deem necessary for keeping in repair the streets, avenues, alleys, and sewers of the city, and all other works which may be intrusted to their charge by the legislative assembly or Congress. They shall disburse upon their warrant all moneys appropriated by the United States, or the District of Columbia, or collected from property-holders, in pursuance of law, for the improvement of streets, avenues, alleys, and sewers, and roads and bridges, and shall assess, in such manner as shall be prescribed by law, upon the property adjoining and to be specially benefited by the improvements authorized by law and made by them, a reasonable proportion of the cost of the improvement, not exceeding one-third of such cost, which sum shall be collected as all other taxes are collected.” (16 Stat. L., 427.)
On the 26th of June, 1873, the legislative assembly passed an act making provisions, apparently, for a comprehensive and complete system of sewerage and drainage for the cities of Washington and Georgetown, in a manner suitable for the wants and necessities of the Federal capital for the present, and in anticipation of the future growth of the metropolis. It divided the territory into five sections, each of which had a distinct and separate system.
A tax of more than two millions of dollars was levied upon the owners of real estate who were held to be specially benefited by the improvement.
This tax was assessed in different proportions in the several sections, varying from five to twenty mills per square foot upon every lot of land therein. It was made payable in five installments, the first in thirty days after service of notice of the assessment, and the others in one, two, three, and four years, respectively.
The act also provided that in case of non-payment of the first installment in thirty days after the notice the board of public works should issue certificates of assessments against the property, bearing interest at the rate of ten per cent, per annum, for the amount of all the installments, payable in one, two, three, four, and five years, respectively, from the time of issue. It further provided that if any installment or certificate should remain unpaid after it became payable, the board should, upon application of the holder of either of said certificates, proceed *116 to sell tbe property against wbicb tbe assessment certificate should exist.
As tbe work was to be proceeded with at once, and tbe tax was made payable at future periods of time beyond tbe completion of tbe improvements, tbe legislature deemed it necessary or advisable to obtain means for tbe prosecution of tbe undertaking as tbe work was progressing, by tbe issue of another class of certificates, called in tbe act “ certificates of indebtedness.” Such, seems to "have been tbe contemplation of tbe legislative assembly. For that purpose tbe act contained tbe following provisions:
“Sec. 7. That tbe said board of public works are hereby au- ■ tborized to issue certificates of indebtedness for work done, and to be done, under tbe provisions of this act, in denominations of fifty dollars, or any multiple of that sum, payable to bearer, with interest semi-annually from tbe date of their issue, at tbe rate of eight per centum, countersigned, by tbe commissioners of tbe sinking fund and registered by tbe comptroller of tbe District,, to an amount not exceeding in all tbe sum of two millions one hundred and twenty thousand dollars, and not exceeding tbe amount chargeable to private property, as aforesaid, for work done under tbe provisions of this act, and payable, not exceeding one-fourtk of said sum, at tbe end of each year from the respective dates of issue, wbicb certificates shall be receivable at. any time in payment of such assessments as may be made under tbe provisions of this act.
“ Sec. 8. That for tbe purpose of securing tbe payment of tbe principal and interest of such certificates of indebtedness tbe board of public works are hereby required to deposit with tbe commissioners of tbe sinking fund all certificates of assessment issued by tbe said board for sewerage, under tbe provisions of this act, and such assessment certificates and tbe assessments upon which they are based, and all payments thereon shall be, and hereby are, pledged to, and shall be received, held, and applied under tbe direction of tbe said commissioners, for tbe payment of tbe principal and interest of tbe certificates of indebtedness authorized by this act, and for no other use or purpose whatever.
“ Sec. 9. That tbe money arising from the assessments authorized by this act shall be received and collected by tbe board of public works, or one of its officers, and full and separate accounts of tbe collections from each section be kept by it, and tbe proceeds be used in payment of tbe cost of tbe construction and completion of tbe respective sewers authorized by this act, in tbe proportion that tbe same may be received from property within tbe several sewer sections established by this act.
*117 uProvided, That tlie contractor or contractors for the erection of any of said sewers may receive the certificates of indebtedness hereby authorized to be issued at par, and in full satisfaction, to the extent to which the same may be taken or received by them, of their contracts or claims on account of the construction of said sewers.”
Under these provisions of law, the board of public works issued a large number of certificates of indebtedness, commonly called sewer certificates or sewerage certificates, representing more tlian-two millions of dollars. These were used and negotiated by the board of public works to pay indebtedness created by them, for various purposes and in various ways.
They were payable to bearer. Being thus made negotiable, they immediately became merchantable securities, well known in Washington and other places where they were offered for sale and sold in open market; and soon, to a large extent, they passed into the hands of assignees, who purchased them for valuable consideration.
The form was substantially as follows, omitting the coupons:
D. 500. District oe Columbia. D. 500.
No. 15.
Washing-ton, July 1st, 1873.
This certifies that for work done under direction of the board of public works, and chargeable to the private property adjoining and benefited thereby, there is due to the bearer five hun- • dred dollars, payable July 1st, 1874, with eight per centum interest, payable semi-annually as per coupons attached. Issued in accordance with act of legislative assembly, secured by pledge to the commissioners of the sinking fund of assessments made in accordance with act approved June 26, 1873, against private property benefited by improvements, and receivable in payment of such assessments.
Board oe Public Works,
By James A. Magruder, Treasurer.
Countersigned:
Horace J. Frost,

For Commissioners of Sinldng Fund.

(On the left-hand margin:) Begistered, Geo. E. Baker, comptroller.
(On the right-hand margin:) Last six months’ interest payable with certificate.
*118 It is to this class of certiñcates that those upon which this action is brought belong.
In 1874 Congress passed the act of June 20, ch. 337, repealing “ all provisions of law providing for an executive, for a secretary for the District, for a legislative assembly, for a board of public works, and for a Delegate in Congress in the District of Columbia,” and creating a commission for the future government of the District until otherwise provided by law.
Section 6 of that act constituted the First and Second Comptrollers of the Treasury a board of audit to examine and audit for settlement all the unfunded or floating debt of the District of Columbia, and of the board of public works, therein specified; among which were specified, “ First, the debt evidenced by sewer certificates”; and “the amount of sewer tax or assessment paid by any person, persons, or corporation under the act of the legislative assembly * * * approved June 26,1873.”
The board of audit was required to issue to each claimant a-certificate stating the amount found tobe due him, andón what account.
By section 7 these board of audit certificates were made receivable by the sinking fund commissioners in exchange at par for certain bonds to be issued by them, commonly called District of Columbia three-sixty-five bonds, in sums of fifty and five hundred dollars, bearing date August 1,1874, payable fifty years, after date, bearing interest at the rate of three and sixty-five hundredths per centum per annum, payable semi-annually.
It was further enacted by the eighth section—
“No property shall be advertised for sale, or sold for the collection of any assessment authorized by the legislative assembly by the act * * * ■ approved June 26,1873, until otherwise-ordered by Congress; and it shall be unlawful to issue any further certificates of indebtedness authorized by said act.”
Ijy section 6, the time for the presentation of claims was limited to ninety days after the first publication of notice by the board calling for such presentation. By joint resolution of December 21,1874, No. 2, § 1, the time was extended for the period of thirty days from that date. By the act of March 3, 1875, ch. 170, the time was further extended to July 1,1875.
By joint resolution of March 14, 1876, No. 4, § 1, the board of audit was abolished.
More than nineteen-twentieths of the sewer certificates, and *119 most of the other claims provided for in the act of 1874, had then been presented and converted into the three-sixty-five bonds. Bnt some still remained outstanding.
By the act of June 16, 1880, ch. 243, Congress gave to this court original, legal, and equitable jurisdiction of a great variety of claims against the District, including among them “all sewer certificates’ and “all sewer taxes not heretofore converted into three-sixty-five bonds.”
It is under the provisions of this statute that the claimant brings his action.
The defendants present four grounds of defense:
First. That the court has no jurisdiction, because, as they allege, these sewer certificates are not and never were debts of the District of Columbia, but were obligations of the board of public works, chargeable to and payable out of a specified fund.
Second. That this whole class of certificates were invalid, as having been issued in violation of law.
Third. That they are not countersigned by the sinking-fund commissioners as required by the legislative act under which they were issued.
Fourth. That all claims arising upon those which matured more than three years before the commencement of this action are barred by the general statute of limitation of this District, limiting the right of action with simple contract debts to three years after their maturity.
In our opinion, these defenses at this time, and in view of all the Congressional action, from the creation of the board of public works to the several acts authorizing the funding of the certificates, are untenable in law, and would be, if sustained, inequitable and unjust to innocent parties.
Investors have been led, by their confidence in the good faith of the Federal Government, to place their money in public securities issued by high public officers appointed by the President, with the advice and consent of the Senate, and acting under a statute of the legislative assembly created by a Federal law for the government of this District, over which Congress is authorized by the Constitution “ to exercise exclusive legislation in all cases whatsoever.” (Const., Art. I, § 8.)
Moreover, the District has had the benefit in some form, to a greater or less extent, of the issue of these certificates, and of the consideration paid for them,through officers intrusted with *120 tbe exiienditure of tbe money by Congress and tbe legislative assembly of its creation; officers over whom investors bad no control, and for whose acts in tbe application of the money, whether right or wrong, justifiable or unjustifiable, they were not legally responsible. Congress expressly recognized tbe legal or equitable claims of tbe holders of such certificates to idemni-fication by providing in tbe act of 1874, ch. 337, for tbe funding of them into District bonds.
Tbe act of June 16,1880, ch. 243, was passed manifestly with those views in tbe minds of tbe legislators, and it effectually disposes of all these grounds of defense. It expressly gives this court jurisdiction of “all sewer certificates,” and fixes a special limitation of six months from tbe passage of tbe act within which tbe prosecution of claims under it must be commenced.
In relation to tbe time for bringing actions on such claims, this court is bound by no other limitation than that contained in tbe act itself.
Tbe certificates of tbe claimant were countersigned for tbe sinking-fund commissioners, as all tbe others of tbe same class were signed, by a clerk appointed by them for that ministerial purpose. His act in countersigning for them was always recognized and acknowledged by tbe commissioners as their act, and there is no claim set up by anybody that be exceeded tbe ministerial authority confided to him, or that these certificates now in suit were not as duly and properly issued as any others of tbe same class.
If there were irregularities or illegalities in tbe original issue of these securities applicable alike to tbe whole class, Congress has waived them by giving this court jurisdiction of tbe certificates themselves by special designation.
Tbe court, however, is not precluded from entertaining exceptional defenses to particular certificates, not applicable to tbe whole class alike, if any such exist and are presented and proved.
By giving to this court jurisdiction of these securities, as it has been given, by an express specification of them in tbe act, under their popular designation, Congress evidently intended that they should be adjusted, settled, and paid in tbe manner pointed out by tbe act, substantially as nineteen-twentieths of all of those which were issued bad already been paid by tbe allowance and certificates of tbe board of audit.
*121 It is urged on the part of the defendants that the words “ sewer certificates,” in the jurisdiction clause of the act, do not necessarily mean the class of securities of which those upon which this action is founded form a part.
The court cannot avoid taking judicial notice of passing events of great public interest and widespread notoriety, well known and familiar alike to suitors, counsel, and judges, and of the commonly understood meaning of words and phrases specially applied to particular subjects and things in the community and among business people, when such words and phrases are introduced into statutes legislating upon those subjects.
That the words “sewer certificates” in the act of 1880, ch. 243, mean and refer to this very class of securities is made too clear by the public notoriety given to them heretofore through Congressional investigations, fully reported and printed, circulated and commented upon in the public press, and through discussions in Congress, and the legislation which followed thereon, for the court to entertain the slightest doubt of the subject. Such is the interpretation which we are bound to give to those words in the connection in which they are used.
Different views have been urged upon us by the claimant and the defendants as to the computation of interest and other matters connected with it, and, although the questions seemed at first to present some difficulties, we think their solution may be satisfactorily arrived at.
The act of June 16, 1880, ch. 243, § 6, makes the judgments of this court upon claims against the District payable, not in money, but in the 3.65 bonds, so called, as described and provided for in the act of 1874. These bonds bear date August 1,1874, and have semi-annual interest coupons attached from that date. The same section of the act of 1880, further provides that “before the delivery of such bonds in payment of judgments rendered as aforesaid on the claims aforesaid, the coupons shall be detached therefrom from the date of said bonds to the day upon which such claims were due and payable.”
This renders it necessary for the court to determine when the claims were due and payable, within the meaning of the act, to cast interest to that date, and to specify the date in the judgment, in order that the Secretary of the Treasury may know *122 wbat coupons, if any, are to be detached from the bonds which he delivers in payment.
These certificates were, by their terms, made payable at different dates — July 1, 1874, July 1,1875, July 1, 1876, July 1, 1877, and July 1,1878 — and the interest coupons, at the rate of eight per cent, per annum, were made payable on the 1st day of January and July of those years.
The claimant insists that he is entitled to eight per cent, interest up to the time the several certificates were made payable.
If these were original unconditional obligations or debts of the District of Columbia, promising to pay the money on the days specified, and this court had the power to enforce them in accordance with the contract made between the parties, that would no doubt be the correct rule. But they were not such debts or obligations, and their enforcement according to the terms of the original agreement has, under the law, become impossible in this or any other court.
A careful reading of the certificates themselves, in connection with the legislative act under which they were issued, shows conclusively that the board of public works did not, for themselves or for the District of Columbia, promise or undertake to pay the amount specified absolutely and unconditionally at the times mentioned.
The contract was a special, limited, and equitable one of three parts, founded on a trust, and to be enforced only out of a trust fund. The board of public works, on their part, were required to issue and deposit with the sinking-fund commissioners “ certificates, of assessment” against the lots of land assessed for the unpaid sewerage taxes, bearing ten per cent, interest. The commissioners, on their part, were to receive payment of these “certificates of assessment” and to apply the proceeds in payment of sewer certificates, and they were authorized to accept sewer certificates in payment of certificates of assessment. The holders of s^wer certificates on their part, might use them in payment of sewer assessments, for which they were made receivable, or they might have the amount specified paid in money when collected by the commissioners.
This was the extent of the contract. It created an interest, for the holder, in a trust fund, and nothing more.
These sewer certificates had been issued to the extent of over *123 two millions of dollars, when Congress came forward with, that superior power of legislation for the District with which the Constitution has invested it, abolished the board of pnblic works and the legislative assembly, abated the sewerage taxes, and prohibited the enforcement of payment of any sewerage assessments, and thus destroyed entirely the trust fund pledged for the payment and redemption of these securities.
After this destruction by Congressional enactment of the fund set apart by the District for the payment of these certificates, it is difficult, if not impossible, to see how the District was at fault for their non-payment, or how it could be legally held liable to pay them in some other way not provided for in the contract.
It was Congress that paralyzed the power of the District to meet its obligations, by taking away the means which both parties had agreed should be used for their payment, and it was Congress alone that could furnish a remedy.
That there was a moral and equitable liability to the holders of the certificates to compensate them in some way for the loss of the securities pledged for their benefit, incurred by the action of Congress, must be conceded.
Congress recognized that obligation, and, in its wisdom, carefully provided for it.
The act of June 20,1874, ch. 337, constituted these certificates a debt against the District to the extent of making them fundable into the three-sixty-five fifty-year bonds authorized by the act of 1874, bearing date August 1, 1874, with interest coupons from that date attached. Holders were allowed ninety days in which to present their certificates to the board of audit for allowance, in order to be funded, and that limitation was twice extended, as we have shown.
By the act of June 16, 1880, ch. 243, giving the Court of Claims jurisdiction of certain debts against the District, the few remaining holders were allowed the further time of six months from the passage of the act in which they might present to this court their certificates in order to obtain judgments made payable in these bonds.
In our opinion the words “ the day upon which such claims were due and payable,” in that clause of the sixth section which provides, as to the delivery of bonds, “ that the coupons shall *124 be detached therefrom, from the date of said bonds to the day upon which such claims were due and payable,” as applied to these certificates of indebtedness or sewer certificates, are to be held to refer to August 1,1874, when Congress first made them convertible into bonds of the District, and thus constituted them, to that extent and in that manner only, and at that time, debts against the District of Columbia.
All the certificates which have heretofore been funded upon the allowance of the board of audit have been allowed, and interest cast thereon upon that basis and that principle. By applying the same rule to like certificates sued upon in this court, all claimants upon that class of securities will have been treated alike from the beginning, and parties will not gain the premium of a greater rate of interest upon their certificates through their own delay in waiting until the latest extension of time for presenting them before availing themselves of the privilege of funding granted by Congress, as they would gain if interest were now cast on the principle urged by the claimant in this case.
The claimant is entitled to judgment for the principal of the certificates shown by the findings to have been produced and filed in this case, with interest thereon so far as represented by the coupons presented and filed, and the account will be made up and stated thus:
1. Principal of certificates which matured July 1, 1874.
2. Interest thereon from date to July 1, 1874, at the rate of eight per cent, per annum, less the face value of coupons which matured before that date, and which the claimant has not produced.
3. Interest on the principal of those certificates from July 1, 1874, and on all coupons which matured before that time, from the date of maturity to August 1, 1874, at the rate of six per cent, per annum, according to the established rate of interest in this District upon matured and overdue contracts for the payment of money.
4. The TU’incipal of all certificates which matured after August 1,1874, less the value at that date of all coupons which the claimant has not produced, viz:
Coupons which matured before that date to be taken at their • face value.
*125 Coupons wbicb matured subsequently, to be taken at tbeir net value at tbat date, computed in the following manner:
First. Bach coupon to be reduced in amount so as to represent interest at three sixty-five per cent, per annum instead of eight per cent.
Second. The sum to be ascertained which with interest thereon at three sixty-five per cent, per annum from August 1,1874, to the maturity of the coupon, will equal such reduced amount.
In order that the claimant may obtain, with the bonds which he is required to take in payment of his judgment, all the coupons attached thereto to which he is entitled, the judgment will specify that it is rendered upon debts due and payable August 1,1874, within the meaning of the act of June 16,1880, ch. 243, § 6.
The claimant will have judgment for the sum of $4,884.17, in accordance with the account stated, upon the principles above laid down, as follows :
Principal due July 1,1874.$2, 800 00
Interest thereon at 8 per cent, from July,
1873, to July, 1874 . $224 00
Less coupons of January, 1874, missing (all). 112 00
- ' 112 00
Interest on the $2,800 principal, at G per cent., from July, 1874, to August, 1874 . 14 00
Principal due after August 1,1874 . 1, 900 00
Interest thereon at 8 per cent, from July, 1873, to August, 1874... $164 66
Less coupons of January, 1874, all missing. $76 00
Less five coupons of July, 1874, of $4 each (4879,4880,4885, 4886, 3466) missing.... 20 00 .
- 96 00
- 68 66
Interest on coupons due July 1,1874, at 6 per cent, up to August 1,1874 . 28
4, 894 94
Deduct actual value on August 1, 1874, of coupon upon certificate No. 1210, due January 1, 1875, for $20.'. 10 77
4,884 17
For the convenience of the court and of parties in other cases, we have prepared the following table, showing the value, *126 August 1, 1874, of tbe different series of coupons on all sewer certificates issued by tbe board of public works, stated according to tbe principles adopted in tbis case: