Bici-iardsoN, J.,
delivered the opinion of the court:
The complications which arose upon the allegations of the several petitions in these five cases, and the plea of set-off and counter-claim filed by the defendant, increased by the fact that the suits were all brought in the names of alleged assignees of the original contractor and creditor, and he was not made a party to the proceedings, have been very much reduced since the recent order of the court consolidating the cases and directing that the assignor be cited in to prove any claim which he might have, or be concluded by the judgment of the court therein.
Frank H. Finley, the assignor, was cited in on motion of all the claimants, appeared in response to the citation, and filed a written disclaimer to any demand in his own name against the District in the subject-matters and controversies involved in each and all of said cases, with a declaration that he has no defense or objection to the assignments, powers of attorney, or *416 other documents signed by him and delivered to the respective claimants touching those matters.
The claimants have filed a stipulation that Thomas A. Brown disclaims any interest in the claims suedforby William Dickson (Nos. 305 and 309), that said Dickson disclaims any interest in the claims sued for by said Brown (No. 3), by Francis Prott (No. 161), and by Brown and Wroe (No. 223), and that said Wroe disclaims any interest in the claims sued for in said Brown and Prott eases (Nos. 3 and 161).
We shall consider the several claims and cases in the reverse order of their importance.
In the case of Brown & Wroe (No. 223) the claimants seek to recover more than eleven thousand dollars for extra work done by Finley, their alleged assignor, in connection with his contracts made with the board of public works. No evidence whatever has been introduced to support this claim, and therefore no finding of fact is made on the subject. There was another claim set up in the case for the balance of whatever might be recovered for other work done by Finley and sued for in the action of Brown (No. 3) after the amounts assigned to said Brown and to Prott should be paid, but the claimant Wroe lias disclaimed any interest in that matter, and it is out of his case. So the petition of Brown and Wroe (No. 223) has nothing to stand upon and it must be dismissed.
In the case of William Dickson (No. 305) the claimant, as assignee of said Finley, seeks to recover $7,123.80 as the difference between what was paid Finley for hauling 30,640 cubic yards of earth under his contract No. 4, and that which he claims was due him therefor. No evidence was introduced by the claimant, and his case must be decided upon the second finding in relation to contract No. 4, and the fifth finding in relation to the defendant’s counter-claim.
It appears that the original contract No. 4 (finding 2) allowed twenty cents for grading and nothing extra for hauling the earth. But by an order of the board of public works January 22,1872, the price was raised to thirty cents for grading, including the hauling, not to exceed two hundred feet, and for each additional two hundred feet one cent additional per cubic yard. By correspondence between Finley and the board, which took place in December, 1872, it was agreed that Finley should be allowed the regular board rates for hauling, so that he was thus promised the benefit of this order.
*417 Ou the 29tb of April, 1873, Finley notified the board of public works that he had completed his contract, and asked that the engineer might be instructed to make a final measurement. Accordingly a measurement was made by the engineer, and an account was stated by the board, in which Finley was allowed for the haul at the rate specified in the order of January 22, 1872. Ou the back of this account Finley receipted for payment of the amount thus found due him. After this Finley made a claim to the board of audit for extra compensation because he deposited the earth in the canal, and was paid $4,596 therefor. This last item of payment is a subject of counterclaim, and we shall have occasion to consider it further in connection with Brown’s case.
Thus it appears that Finley was paid for hauling the earth mentioned in Dickson’s petition the exact rates fixed by the board; that he knew of those rates when he was paid, since he receipted for the money on the very account itself, and made no objection. Flor could he well object. The price at which he had contracted to do the work had been greatly enlarged by a general order'of the board, and he had been given the full benefit of that order, instead of being held to his original agreement. Dickson stands in no better position as assignee than did his assignor, and his petition (No. 305) must be dismissed.
In the other ease of William Dickson (No. 309) the claimant alleges in substance that by the terms of the contracts of said Finley with the board of public works (Nos. 4 and 795) it was agreed that he should be paid for all work done thereunder in lawful money of the United States; that he did a large amount of work, and the board failed and refused to pay him in lawful money of the United States, but compelled him to receive at their face value certificates of indebtedness of the board of public works of the value in lawful money of the United States of 50 to 60 cents on the dollar; that to provide money with which to pay his workmen he had to sell said certificates, and did sell them, and realized the highest market value thereof, whereby he was damaged to the amount of $88,743.
To this petition the defendant files a general demurrer.
Finley’s grievances, of which complaint is now made and for which damages are claimed against the District of Columbia, are these; and a mere statement of them is quite sufficient to dispose of the case in favor of the defendants. The board of *418 public works, representing tbe District in the matter, owed to to him a large amount of money; they bad no money with which to pay him, and they gave him certificates acknowledging the indebtedness. That wastheexacttenorof each certificate. This did not change the relation of the parties or the nature of the contract between them.. It was-not payment and satisfaction of the debt. The certificates were payable in lawful money, and after the receipt of them by Finley the board or the District was still under obligations to pay as before in lawful money of the United States. He was not compelled by contract, express or implied, with the District or the board of public works to sell these certificates. He might have brought suit upon them and recovered judgment for the full amount due him, or he might have held them until the District or the board should be in funds to pay. them. But he did neither. He was pressed for money with which to pay his workmen, and was apparently without ready capital with which to carry on his work. In this emergency of his own, he went into the market and sold his certificates at great discount. The District in due lime redeemed the certificates and so paid them in full, according to their tenor or to the satisfaction of the holders. The loss made by Finley was of his own creation,, and, although it may have been a remote consequence of the breach of contract on the part of the board of public works in not paying at the time agreed upon, the District could be held to pay only the amount actually due; and that they have done. The measure of damages for the non-payment-of money at the time fixed by contract is the amount of money promised, with interest thereon from the time ivhen due or demanded.' In this case all such damages were settled and paid when the certificates were redeemed and surrendered. (Vennum v. Gregory, 21 Iowa, 326; Insurance Co. v. Piaggio, 16 Wall., 378.)
If the board of public works, with its limited and special powers, superadded to the general restraints on public officers in contracting in the name of their principal, could not by express oral contract bind the District to pay such losses as Finley sustained by the sale of his certificates, we are certainly not at liberty to charge the District on an implied contract of that kind, arising from his being compelled by his own necessities to dispose of his claims at great discount. (Bauer v. Franklin Co., 51 Mo., 205; Dillon on Municipal Corporations, *419 503.) And that the board of public works had no power to bind the District by oral contracts to indemnify its creditors, who received its certificates of indedtedness, against loss in the sale of them, for want of a previous appropriation therefor and other causes, is fully shown by the court in the case of the Neuchatel Rock-paving Company v. The District of Columbia (ante, p. —), and we refer to that opinion for further exposition of our views.
The demurrer in this case is sustained.
This disposes of all the consolidated cases, except those of Thomas A. Brown (No. 3) and Francis Prott (No. 161). These two cases are governed by facts the same in the one case and the other, and are founded upon a claim for work done by Finley under his contract No. 795 for grading Virginia avenue, upon which the findings show that there was due him the sum of $10,965.89, subject to the decision of the court as to certain counter-claims. Of this sum Brown claims $10,000 under his assignments from Finley, and Prott claims the balance under the assignment to him .made subsequently to the first one to Brown.
The balance due Finley, aside from the counter-claims, was not controverted at the trial, but was agreed upon by the parties. The whole controversy is confined to the validity of. three items of set-off and counter-claims, pleaded by the defendant. These we shall consider in their order as pleaded.
1. By contract No. 795 (first finding) Finley agreed to lay and put down blue-stone pavement, for which he was to receive, as therein specified, per square yard, one dollar and fifty cents ($1.50), which shall include two (2) feet of grading.” He laid 8,822.06 square yards of such pavement, which at the contract price entitled him to receive $13,233.09.
An account was stated by the board of public works, on a partial measurement of the same, specifying that price, and a partial payment thereon was made to him by the board, and he receipted for the same on the back of the account.
After the abolition of the board of public works, a final measurement was made and an account stated at the same price. The board of audit paid to him the balance of the account, and he signed a receipt at the bottom thereof “ in full settlement of'the above-entitled claim.”
Subsequently, on the 16th of August, 1875, Finley filed a claim before the board of audit, alleging that he was entitled *420 to $1.75 for laying that pavement, instead of $1.50 as paid to-him. Upon'this claim the board of audit, on the 20th of August, 1875, allowed him 25 cents additional per yard on all such paving for which he had been paid $1.50 a yard, amounting to-$2,205.52, and that amount was paid to him.
The defendant seeks to charge Finley with this sum as paid to him without authority of law and in mistake of fact. We are of opinion that its position is sound and must be sustained.
The authority of the board of audit to permit the presentation of claims was first limited to ninety days after the first publication of notice of the board calling for such presentation.. This time was twice extended, and the last limitation-expired July 1,1875. (Fendall’s Case, 16 C. Cls. R., 118.) It was more than six weeks after this extension had expired, August 16, before Finley presented this claim. At that time the board had no jurisdiction to receive claims, and all action by them upon claims thus presented was ultra vires and voidable if not void. (Demarest v. Barbadoes, 40 N. J. L., 604; Starkweather v. Supervisors, 42 N. Y. Sup. Ct., 325; Donoho v. The Mayor, &c., 17 id., 37.) The defendant was not bound by the action of the board in such case. Money received by Finley upon its authority, in payment of an alleged claim over which it had no jurisdiction, was received without consideration, and may be recovered back by counter-claim or otherwise, unless ic was in fact justly due and owing to him, in which case it might perhaps make no difference how he happened to receive it. But this money was not legally and justly due and owing to him.. He had contracted to do the -work at $1.50 a yard; he had assented to the statement of his account and had received payment at that price, and he had given a receipt in full settlement of the claim.
The allowance was made by the board of audit in mistake of fact upon the misrepresentation by Finley that the price contracted for was $1.75 per yard. This brings the matter exactly with the decision of this court in Neitzey v. The District of Columbia [ante, p. 111), in which we held thatf money paid by the District upon an allowance made by the board of audit upon mistake of fact may be recovered back by means of a plea of counter-claim. (Kelly v. Solari, 6 M. &. W., 53; R. R. Co., v. Faunce, 6 Gill, 68; Johnson v. Rutherford, 10 Pa., 455; Law *421 rence v. The Bank, 54 N. Y., 432; Stewart v. Sears, 119 Mass., 143; Story on Contracts, § 541.)
In Adams’s Case, decided at this term, we reviewed the origin and functions of the board of audit, and showed that it was not the representative of the corporate powers of-the District. Its officers were merely accounting officers forced upon the District and its creditors by Congress. “ That board,” said the Supreme Court, in District of Columbia v. Cluss (103 U. S. R., 706), “was not a judicial body whose action was final; it exercised little more than the functions of an accountant. A claim allowed by it was not necessarily a valid one; a claim disallowed was not, therefore, illegal. Its action either way left the matter open to contestation in the courts.”
Upon the allowance of a claim by the board of audit a certificate was issued which was redeemed by sinking-fund commissioners, who, likewise, were not the representatives of the corporate power of the District, and who had no authority to revise the action of the board of audit. They were bound to redeem whatever certificates that board issued, whether rightly or wrongly, and could not go behind them. When, therefore, the board of audit allowed claims upon mistake of facts, and the sinking-fund commissioners redeemed the certificates issued thereon, it cannot be held that payment was made by the District voluntarily and with knowledge of the facts. The District is not concluded by the errors of those accountants designated by Congress, but it can set them up whenever the matters are brought into court, either to defeat claims irpon which they are founded or to reaver back money paid on account of them.
The settlement of accounts by boards thus constituted ought not to be held as binding and conclusive as settlements made by the accounting officers of the Treasury of the United States when consummated by payment upon the warrant of the Secretary of the Treasury, who, in that regard, is to some extent the representative of the government. But even in the latter case payments made in error may be recovered back by way of setoff when the claimant-brings the government into court and seeks to recover a balance which he alleges to be due to him. (McElrath's Case, 102 U. S. R., 441, affirming 12 C. Cls. R., 215; Real Estate Savings Bank Case, 16 C. Cls. R., 350; McKnight's Case, 13 C. Cls. R., 292; McKee’s Case, 12 C. Cls. R., 560.)
*422 2. In Finley’s contract No. 4, of September 18, 1871 (second finding), tbe price for grading was fixed at twenty cents per cubic yard. This was the same price which had been fixed by the board of public works by general order September 14,1871, wherein it was specified that the earth was to be deposited where directed without extra charge.
On the 22d of January, 1872, an order was adopted by the board of public works by which the price of grading was changed from and after that date and established at 30 cents per cubic yard, including the hauling, not to exceed 200 feet, and for each additional 200 feet one cent additional per cubic yard.
On the 22d of May, 1872, this contract of Finley was extended to include additional work on Eleventh street, with no change in prices specified.
Thereafter, on the 18th of December, 1872, Finley notified the board of public works that he had been given permission by their inspector to deposit the earth taken from Eleventh’street in the canal, and requested to beinformed if he would be allowed board rates for hauling the same and depositing it therein. In reply to this communication he was informed by the board that he would be allowed regular board rates for the hauling. Whereupon he continued to deposit in the canal the earth excavated by him.
On the 29th of April, 1873, Finley notified the board that he had completed that work, and asked for a final measurement. A measurement was thereupon had and an account stated, in which Finley was allowed for hauling (in addition to grading) 30,640 cubic yards of earth, at the exact price specified in the order of the board of January 22, 1872, which Finley had been notified, in response to his request, would be allowed to him, although it was much larger than the rate named in his contract. This account thus made up showed that there was due him the sum. of $7,813.20. This amount was received and receipted for by him June 2, 1873, on the back of the account and without objection to the price allowed.
Long afterward, when the board of public works had ceased to exist, on the 23d of September, 1875, he presented to the board of audit a claim for additional compensation for depositing this earth in the canal. The board of audit having been induced by the misrepresentations of the claimant or otherwise to suppose that the board of public works had agreed to *423 give Mm 15 cents per cublic yard for eartli deposited in tbe canal in addition to tbe price for hauling, made allowance to him therefor to the amount of $4,596, and he was paid that sum on such allowance.
This claim was also presented long after the authority of the board to receive claims had expired, and its action thereon was ultra vires, and voidable if not void. Besides, the claim had no foundation in fact. The board of public works never did agree to pay 15 cents or any other price for depositing earth in the canal the' hauling of which they were to pay for according to distance hauled. Such an agreement was not expressed in any of the writings or facts set forth in the findings; and it is not to be presumed, so closely would it border upon absurdity. When a contractor agrees to excavate earth and haul it away, and prices are expressly fixed for the excavation and for the haul, it is hardly to be conceived that it could be understood that he was to have extra compensation for emptying his carts. And yet such was Finley’s claim, and the board of audit fell into the mistake of accepting it.
This allowance was made in mistake of fact, and the defendant has a right to set it up as a counter-claim against Finley.
3. On the 13th of June, 1874, the board of public works stated a final account with Finley for sewer work on K street, under contract No. 795, allowing him the increased prices named in the extension of June 9,1874, and the previous correspondence upon w’hich it was founded. (First finding.) This showed the amount due him to be $14,395.02.
Of this sum the board of public works paid him part, and he receipted on the back of the account without objection to the prices. After that board was abolished the board of audit paid him the balance and he receipted for the same on the account “in full settlement of the above stated claims.”
Finley never claimed anything more, but by some means, not explained, the board of audit, without any demand or presentation of claim by him, allowed to Finley $1,741.66 for extra excavation, on account of quicksands and other matters, upon an old bill which somebody other than Finley had exhumed from the archives of the board of public works, and which had been compromised, settled, and abandoned long before the board of audit came into existence. The facts about that old bill seem to be these:
*424 In April, 1874, he had sent his claim for extras to the board of public works. Soon afterward, on the 23d of May following, he wrote to the board appealing for better rates of compensation than his contract specified, on account of the difficulties that beset him in accomplishing the work. The board took into consideration his appeal, and the bill for extras which he had presented, and they very largely increased the prices for work under his contract No. 795. These prices were allowed for all work included in the final settlement, and were intended to cover all the items of the bill which the board of audit afterward allowed, and were a discharge and satisfaction thereof. Finley so understood it, for he never thereafter claimed the same as due him, and never presented any such demand to the board of audit. He took the money, not because it was due to Mm, nor because he had set up any claim to it, but merely for the reason that the board had mistakenly allowed it to him. It was, in fact, forced upon him.
It would be a perversion of justice, when he comes into court and asks for a final settlement of his accounts, and for payment of the balance due him, if he could retain money of the District thus wrongfully obtained from it. We cannot do otherwise than hold that, the allowance and payment being made in mistake of fact, the defendant may set up the same against Finley by way of counter-claim.
Such was the state of the account between Finley and the District of Columbia, when legally and equitably made up, and the result was as follows: The District was indebted to Finley for work on Virginia avenue a balance of $10,965.89. Finley was indebted to the District in the sum of $8,543.18 for money paid to him without consideration and in mistake of facts, and which he had not in equity and good conscience any right to retain. Deducting the one sum from the other left a net balance in Finley’s favor of $2,422.71, which was due and payable March 10, 1876.
The claimants appeal to the equity jurisdiction conferred upon the court by the act of June 16,1880, but that is not favorable to their demands. One of the first principles of equity jurisprudence is that he who seeks equity must do equity. To allow Finley to recover from the District without deducting from his claim wha.t he has already received, in overpayments *425 and without consideration, would be a palpable violation of that fundamental maxim.
All the proceedings to which we have thus far referred took place previous to the giving of any of the orders and other -documents by Finley set forth in the eighth finding.
On the 28th of March, 1876, Finley gave to the claimant Brown an order upon the District for the sum of $10,000, to be paid out of the balance going to Finley for work done under contract No. 795, for grading on Virginia avenue. On the 31st of March he gave to the claimant Prott a similar order for $1,450.49. On the 23d of October, 1880, he made a general assignment under seal to the claimant Brown of all claims and ■demands whatsoever which he had against the District of Columbia.
It is unnecessary to determime whether or not the orders to Brown and Prott, directing the District to pay to them each a specific sum of money, supposed then to be only part of the whole amount due, are such assignments as authorize the drawees to maintain suits in equity in their own names against the District to recover the several amounts thus ordered to be paid, if there were sufficient due to Finley to pay the same. If Prott’s order is a valid assignment, so then is Brown’s first order; and Brown’s order, being of prior date to that of Prott, and for an amount larger than the balance found due to Finley, absorbs the whole fund and leaves nothing for Prott. ’ If neither Prott’s nor Brown’s order is valid as an assignment, then Brown’s general assignment of a later date is operative, and transfers to Brown all the claims and demands of Finley against the District. In either case Brown is the sole assignee or representative of Finley, as to the balance which the findings show to be •due, his assignor, and is entitled to recover just what Finley might have recovered but for his orders and assignment.
Brown’s order and assignment at most were equitable assignments of a non-negotiable chose in action, and such assignments are subject to all equities between the original parties which occurred prior to the time of giving notice thereof to the debtor. The assignee stands in the place of the assignor, and the rights of the debtor are not changed by the assignment. (Brashears v. West, 7 Pet., 616; Maugles v. Dixon, 3 House of Lords’ Cases, 731; Mosteller v. Bost, 7 Iredell, 39; Faul v. Tinsman, 36 Penn., 108; Timms v. Shannon, 19 Md., 296.)
*426 It follows, therefore, that the claimant Brown is entitled to judgment for the balance found due to Finley, $2,422.71.
The several judgments to be entered are as follows:
The petitions of Francis Prott, No. 161, of Thomas A. Brown and Charles P. P. Wroe, No. 223, and of William Dickson, No. 305, are dismissed.
The demurrer of the defendants to the petition of William Dickson, No. 309, is sustained.
Thomas A. Brown,' in his action No. 3, has judgment for $2,422.71, due and payable as of March 10, 1876.