Bichardson, J.,
delivered the opinion of the court:
The claimant did work for the defendant, under a written contract with the Board of Public Works, by which it was agreed that the board should pay or cause to be paid to him or his heirs, executors or administrators, in lawful money of the United States, the amount which might be found, from time to time, due him according to contract.
When his work was completed an account was stated by the auditor of the board upon the measurement of the engineer, by which account more than $6,000 were found to be due him. *157 The correctness of that account is not controverted by either party.
The Board of Public Works neglected or refused to pay the amount found due. It is a well known fact of public local history, repeatedly referred to in the opinions of this court, to a greater or less extent reviewed in public documents and discussed in Congress and elsewhere, that the government of the District of Columbia and the Board of Public Works, created by the Act February 21, 1871, ch. 62 (16 Stat. L., 419), in their efforts to improve and beautify the city of Washington on a comprehensive scale in order to make it a fit and imposing capital of a great nation, involved the District in debt to the extent of some $20,000,000, and were without money either to proceed further with the contemplated work or to meet obligations already incurred. The credit of the District was greatly impaired, and its securities fell in the market below fifty cents on a dollar.
The Board of Public Works, for the convenience of its numerous creditors, went on auditing their claims and giving to them certificates sigued by the auditor, stating that he had audited and allowed their accounts for work to the amount specified therein. These certificates were not in terms negotiable, but they were frequently sold in the market, and often hypothecated for money borrowed. (Neuchatel Co. Case, 16 C. Cls. R., 593.) They were also received by the board in exchange for what were commonly called sewer certificates, a kind of security issued by the board, payable on time, with interest-coupons attached, representing interest at the rate of 8 per cent, per annum. These sewer certificates were redeemable by the sinking fund commissioners, out of the proceeds of collections from assessments upon owners of real estate for sewer improvement work.
In 1874 Congress passed the Act June 20, chapter 337 (18 Stat. L., 116), repealing “ all provisions of law providing for an executive, for a secretary for the District, for a legislative assembly, for a Board of Public Works, and for a delegate in Congress in the District of Columbia,” and creating a commission for the future government of the District until otherwise provided by law; prohibiting the further issue of sewer certificates, .and forbidding the enforcement of the assessments upon real estate which were held by the sinking fund commissioners for *158 the redemption of such certificates. This completely destroyed all means for paying those certificates by any public officer, as well as for the enforcement of payment by the holder, according to the terms of the contract.
But Congress at the same time created a Board of Audit, which, within a limited time, was authorized to examine and audit for settlement the unfunded and floating debt of the District and of the Board of Public Works, including these auditor’s certificates and sewer certificates, and providing that another kind of certificates should be issued by the Board of Audit to creditors whose accounts they allowed, and that these latter certificates might be exchanged for District bonds, commonly called three-sixty-five bonds. Most of the unpaid certificates of all kinds were thus redeemed, and the redemption of what remained when the Board of Audit was abolished was subsequently provided for by the District claims Act of June 16,1880, chapter 243, giving jurisdiction of such claims to this court. (Supplement to Rev. Stat., 562; Fendall’s Case, 16 C. Cls. R., 106.)
The District has thus paid or funded into long bonds, now selling in the market at more than 13 per cent, above par, all its matured indebtedness of every kind. The present claimant, was one of those creditors, who, after having obtained the certificates of the auditor of the Board of Public Works for the amounts found due him, sold them at a discount or exchanged them, by himself or his assignee, for sewer certificates, and then sold the latter at or below sixty cents on a dollar of their face value.
He now brings this action to recover damages for breach of contract on the part of the defendant for not having paid him in lawful money of the United States, according to the terms of the agreement under which he did his work, claiming as the measure of damages the difference between the face value and the market value of the certificates which he accepted. This raises precisely the same question which was presented in the case of Brown and others v. The District (17 C. Cls. R., 402), Neuchatel Co.’s Case (ibid., 386), and Adams’s Case (ibid., 351), where we held that the claimant could not recover.
The claim set up in these cases is certainly a novel one. It is nothing more or less than a claim that a debtor financially embarrassed, so that his credit is greatly impaired and his ob *159 ligations are much below par in the market, afterwards, when his circumstances are improved, and he has paid the principal of all his debts in full, he shall be liable further to pay the losses of his creditors who' sold his obligations at a discount when he was embarrassed, or, in other words, that he shall be liable in damages for not maintaining his credit.
The fact that the contract of the claimant required the District to pay him in lawful money of the United States does not alter the case nor in the slightest degree change the defendant’s obligations. All debts are payable in lawful money, unless otherwise expressly agreed between the parties, and the insertion of that obligation in the contract created no additional liability. It was merely a written agreement to do what the District would have been held to" do without it.
The claimant’s losses arose partly from his own misfortunes, or his own distrust of the credit of the District, as well from the temporary inability of the defendant to meet its obligations at maturity.
The first certificates which he received, the auditor’s certificates, were mere acknowledgments of the amount found due him, and were, of course, payable in lawful money, both by contract and by law. He might have maintained an action upon them and recovered the full amount, with interest. The measure of damages for the non-payment of money according to contract is the amount due with interest, the latter being the damages for delay. (Insurance Co. v. Piaggie, 16 Wall., 378.)
The claimant voluntarily sold at a discount his claim for pay- - ment for work done according to the auditor’s certificates or changed it by himself or his assignee for obligations payable on time, with interest. This exchange was payment by the acceptance of a new and different obligation, the value of which, as between the parties, was settled by the substitution of one security for another. That the new security was sold subsequently below par did not affect the terms of the previous settlement. The defendant was no more liable to the claimant for any loss which the latter suffered by the sale of the securities thus taken than the claimant would be liable to the defendant for any profits which he might have derived from selling at a profit; and he would have obtained a profit had he exchanged his securities for three-sixty-five bonds, as he had a right to do, and have retained them until the credit of the District revived.
*160 One who elects to sell .the obligations of his debtor, instead of retaining them for collection, must himself sustain the losses, as he would himself receive the profits of the transactions.
We find no ground on which this action can be maintained, and the claimant’s petition must be dismissed.