Richardson, Ch. J.,
delivered the opinion of the court:
Two claims are set out in the petition in this case :
First. The sum of $166.28 “ retained on pavement,” as appears by the final settlement set out in finding vii. This is uot-controverted by the defendant.
*266 Second. The sum of $4,060 for “ certain grading of exeava-tiou of stone or rock” done by the claimant’s intestate, Ryan, over and above the amount paid to him. As to this claim the facts are these: Said Ryan and the Board of Public Works entered into a written contract July 23, 1872, by which he was to do certain work for the improvement of New Jersey avenue southeast, at the prices therein specified, among which were “ Grading, thirty (30) cents per cubic yard, which shall include the first two hundred (200) feet of hauling,” and “ Excavation and refilling, forty (40) cents per cubic yard, to be measured in excavating only.”
Just before the making of this contract the board had entered in its journal as follows: “ Chief engineer was notified that the following price was established for rock excavation, viz: In ditches for sewers, &c., $1.50 per cubic yard; cutting down streets and the like, $1. Auditor and contract clerk notified.”
It is urged on the part of the claimant that he is entitled to $1 per cubic yard for so much of the grading and excavating done by said Ryan.as was “rock excavation,” instead of the contract price of 30 cents for grading and 40 cents for excavation. In this demand we cannot concur.
The entry upon the journal of the board establishing prices did not control the written contract of the parties subsequently made. It was so held in Roche’s Case (18 C. Gis. R., 217), where the journal entry establishing prices by its terms related back to a time anterior to the contract. It would seem that entries of that kind in the journal of the Board of Public Works-were intended to apply to work where no written contract existed, and perhaps to the kinds of work described where done separately from other work.
The contractor in this case was to be paid 30 cents for grading and 40 cents for excavation, without any distinction as to the different character of the work which might occur in different places. The contract was evidently based upon the average character of the whole work to be done, which might prove either more favorable or more expensive to him than was anticipated. In the one event he would have the advantage, and in the other he would be obliged to sustain the loss.
It is easy to understand that when one was employed to do a piece of work which was all rock excavation he would have *267 a larger price than when employed to do excavation which was of varied character in different parts, and the prices established by the board would therefore seem to apply only to work of the former kind.
It appears that in some cases like the present the Board of Public Works did allow and pay contractors the board rate for rock excavations. There might have been exceptional cases of hardship where the board undertook to favor meritorious contractors beyond their legal rights. But for whatever reason it was done, no obligation on the District was thereby established to do likewise to other contractors.
Subsequently to the date of Ryan's contract the board adopted a form of contracts which classified grading and excavating streets into two kinds — road and gravel excavation, and rock excavation when blasting is required. But'the claimant is not entitled to the benefit of this change in the form of contracts with subsequently contracting parties, and if he were he would gain nothing by it, for the findings show that none of his rock excavations required blasting.
In Davis’s Case, decided at the present term (ante, 157), the claimant had a contract in the more recent form above referred to, in which a price was put down for sand or gravel excavation, and although rock excavation when blasting is required was put down as one of the items of work, no price was carried out. The claimant did some rock excavation not requiring blasting, and the court held that it did not come within either of the items of his contract. It was not ■“ sand or gravel excavation,” and so was not to be paid for at the price named for such work. He therefore recovered for the reasonable value of the work as outside of the contract.
The claimant’s case is quite different. The prices fixed by his contract were for grading and excavation generally, and were not limited to sand or gravel excavation. The work he did came within the general language of the contract for which the prices were fixed. Those prices have been paid and nothing more is due on that account.
There are three items of counter-claims set up by the defendant:
First. In the account settled by the Board of Public Works, as set out in finding iv, the contractor was paid for 8,889 cubic ‘ yards of grading at 40 cents per yard, and it is claimed on the *268 part of the defendant that the contract price was only 30 cents a cubic yard.
It is true that the contract does fix the price of grading at 30 cents a cubic yard, but it also fixes the price of excavation at 40 cents a cubic yard. Exactly what was the distinction does not appear, but it seems by the account tha.t the engineer certified to two kinds of grading, one at 30 and the other at 40 cents a yard, and it is to be presumed that the latter included excavation, especially as the findings show that considerable excavation was done. We do not think that the defendant has established any error in the matter.
Second. In the account set out in finding vii it appears that the engineer deducted $1,503.87 "for 2 feet grading under contract,” and that when the account was settled that deduction was omitted and the gross amount was paid. There is nothing in- the case by which to determine whether or not this deduction should have been made, and as the burden of proof is upon the defendant who alleges an error, and it has not been proved, this item of counter-claim cannot be allowed. If the work was done under the original written contract, nothing in that instrument required such a deduction on any work embraced in this account. The extension of the written contract signed by the claimant was not signed by the Board of Public Works, and if the work was therefore not done under the written contract we have nothing to show what were the prices agreed upon or what the work was reasonably worth. The defendant has not shown what prices should have been paid, and those actually paid must be presumed to be correct.
Third. In the account set out in finding iv the claimant’s intestate was allowed for "25,317.7 cubic yards haul, 800 feet over 200 feet, at 4 cents per yard,” which was the contract price, and he was paid accordingly.
Subsequently the same account was restated by the Board of Audit and this item was put down at 10 cents per yard, and the difference between 4 cents and 10 cents was paid thereon. This was wholly without justification and must have occurred by fraud or gross mistake. The claimant was thus overpaid by Board of Audit on that account the sum of $1,519.07. (Neitzey’s Case, 17 C. Cls. R., 101; Brown’s Case, 17 C. Cls. R., 420.)
As the original claimant has died, without assets, as it is understood, and the case is prosecuted by his administrator, the *269 defendant asks tbat only so muck of said overpayment shall be set off against the $166.28 retained, as set out in finding vii, as will equal the latter sum, and that is allowed.
On the whole case the claimant’s petition will be dismissed.