Richardson, J.,
delivered the opinion of the court:
The claimant, who had done a large amount of work for the District of Columbia, upon contracts made with the board of public works, being unable to obtain payment in cash, took . from the board at different times and for different sums numerous certificates of indebtedness, in the following form:
“ No. — .] OEEICE OP AUDITOR BOARD OP PUBLIC WORKS,
u Washington, D. G.,-, 1873.
I hereby certify that I have this day audited and allowed the account of-, for work, amounting to-dollars.
“$-.
“ J. O. Lay, Auditor.”
These certificates he was accustomed to sell in the market or to borrow money upon, according to his convenience or necessities. When either sold, or hypothecated as security for the payment of his notes for money borrowed, he invariably transferred them by delivery, with his name written across the back in blank indorsement.
Among the certificates thus received by the claimant, and so transferred by him, are the five upon which this actionis brought. Four of these, Nos. 2955, 3441, 3443, and 4177, he pledged to one Blumenburg, in November and December, 1873, as security for money borrowed on his own notes payable at a future time. As to the other, No. 4342, it does not appear to whom it was transferred, or whether it was sold or pledged, or by whom it was collected from the District, except that it was not paid to the claimant.
Three of the certificates, Nos. 2955, 3441, and 3443, were redeemed and paid by the board of public works before any con *360 troversy bad arisen in relation to them between the parties, so far as the findings disclose.
Subsequently, on the 24th of March, 1874, the claimant delivered to the treasurer of the board of public works the following written paper:
“Washing-ton, D. 0., March 24, ’74.
“I, William H. Adams, of the city of Washington, District of Columbia, do hereby enter this my solemn protest against the payment of the following securities of the board of public works of the District of Columbia, the same being my property, and fraudulently disposed of by one Budolph Blumenburg, in whose hands they had been placed as security for certain loans, viz:
Auditor’s certificates numbered 3443 . $320
Do. 2955 . 1,576
Do. 3442 . -2,000
Do. 4177 . 5,000
“Witness my hand and seal the day and year first above written.
“ War. H. Adabts.
“ Witness:
“ J. J. Jones.”
This was not filed with the board, and what became of it does not appear.
By the act of June 20, 1874, eh. 337 (1 Supplmt. B. S., 53), the board of public works was abolished, and went out of existence on that day. By the same act a board of audit was established, consisting of the First and Second Comptrollers of the Treasury of the United States, “ to examine and audit for settlement all the unfunded or floating debt of the District of Columbia and of the board of public works therein specified * *; secondly, the debt purporting tobe evidenced and ascertained by certificates of the auditor of the board of public works.” The board was required to issue to each claimant a certificate stating the amount found due and on what account. These last mentioned certificates were made exchangeable for District of Columbia 3.65 bonds, so called, authorized by the act. Notice for the presentation of claims was to be given by the board, and no claim was to be ■ audited or allowed unless presented within ninety days after the first publication of such notice. This limitation of time was twice extended, and the board was *361 finally abolished March 14, 1876. (FenclalVs Case, 16 O. 01s. R., 118.)
On July 16, 1874, certificates Nos. 3441 and 4177 were presented. to the board of^audit; the former by Frank D. Orme and the latter by N. A. Cowdrey, were audited by the board of audit, and certificates, exchangeable for bonds provided for in the act, were issued to them respectively. The original certificate (No. 3441) presented by Orine remained indorsed by the claimant in blank. The orginal certificate (No. 4177) presented by Cowdrey had printed over the claimant’s name a formal transfer to Cowdrey for value received.
Each of the certificates (except the last, No. 4177) had a receipt in blank printed thereon when issued, and that remains not filled up.
It does not appear that the attention of the board of audit was ever called to the paper or notice given by claimant to the late treasurer of the board of public works, or that they ever knew of its existence; nor does it appear that the board was informed of any controversy about these particular certificates, although one of its accountants had at some time made some kind of a list of controverted certificates, and the board used the same, but whether the certificates now in suit were noted thereon the findings do not show. And it does not appear whether or not the claimant resisted the payment of any of said certificates by the board or appeared before it to assert any claim of his own thereto.
Neither Blumenburg nor any assignee of his has accounted with the claimant for the proceeds of said certificates nor returned the notes for which they were pledged.
Such is the case of the claimant, and he insists that the defendants are liable to him for the full value of said certificates on the ground that, under the circumstances, the holder of them had no right to collect them, and that the defendants paid them in their own wrong. Several questions of law are involved in this issue which we must determine.
The certificates of the board of public works, or of the auditor of the board, were merely acknowledgments of indebtedness to to the claimants, without a promise to pay the amount to him or his order, and were therefore not negotiable so as to-admit the holder, other than the party named therein, to bring an action at law thereon in his own name, or so as to prevent the *362 maker from setting up any defense thereto against the original owner which accrued before notice of any assignment. And yet such choses in action are assignable so as to transfer to the assignee all the property of the assignor therein. The assignee may bring an action at law for his own use in the name of the assignor, and in some States he may so set out his interest, in his pleadings; and he could always set up his assignment in a court of equity by a bill in his own name. The cases are numerous in which the doctrine has been upheld that the maker of such certificates, or debtors in such choses in action, are justified in paying the same to assignees or may be compelled to pay to them against the objection of the original creditor where the assignment was without fraud and for value received. (Litch-field v. Smith, 17 Maine, 327; Dennis v. Twitchell, 10 Met., 180; Tally v. Freedman’s Savings Bank, &c., 93 U. S., 321, affirming same case, 1 McArthur, 522; McNeil v. Tenth National Bank, 16 N. Y., 325; Cowdrey v. Vandenburg, 101 U. S., 572; Neu-chatel Co. Case, 16 C. Cls. R., 593; Drake on Attachment, §§ 609-614.)
It is not denied that the claimant negotiated and assigned in pledge the certificates here in suit for a valuable consideration, and that he indorsed them in blank and delivered them to Blumenburg, his assignee. As was said by Mr. Justice Field in Cowdrey v. Vandenburgh (101 U. S., 576), “ the claimant could have expressed in his indorsement the purpose of the deposit •of the certificate with Blumenburg — that it was security for a specified sum of money — and thus imparted notice to all subsequent assignees that the pledgee held only a qualified interest in the claim.” This he did not do. On the contrary, he chose to put his name on the back of each certificate in blank, thus giving implied notice to any and all persons who should deal with Blumenburg, that he placed his trust in the holder of the certificate without restriction or limitation, and was satisfied to allow him the powertodeal with the blank indorsements, as such indorsements are usually dealt with in commercial and business affairs, by filling up a transfer or passing the certificate to another assignee to be filled up in like manner, or to collect payment upon the authority thereof.
Thus Blumenburg, having possession of these certificates (four of them), with claimant’s blank indorsement thereon, and having a special property therein on account of the loans he had *363 made upon them, presented or caused to be presented, September 16 and October 16, 1873, two of them, Nos. 2955 and 3443, to the treasurer of the board of public works for redemption and payment. The treasurer paid them to the bearer, who produced and surrendered them with the claimant’s blank indorsement thereon, without objection from anybody and without notice of any controversy existing in relation thereto.
Certificate No. 3442, which was not among those pledged to Blumenburg, was paid in like manner by the treasurer October 16,1873, to the bearer, who produced and surrendered the same, with the claimant’s blank indorsement thereon, and without objection or notice of controversy. The claimant has not proted, as the finding shows, that he did not part with this certificate for full value or that he has any equitable or other claim to it in any form.
The demand of the claimant to recover payment of those three certificates after the District had paid them to the bearer with the claimant’s blank indorsement thereon and without objection has not even a shadow of right in law or equity to rest upon.
As to certificate No. 3441, which was audited and allowed ' October 16,1874, by the board of audit, to one Frank D. Orine, who was the bearer of it and who presented it with the claimant’s blank indorsement thereon, no objection to its payment seems to have been made. This was not one of those the payment of which was protested against, in the paper delivered to Magruder, the treasurer of the board of public work's, March 24, 1874; and no notice, express or implied, to the board of audit is found. So we may regard this certificate as having been paid without objection from the claimant.
As to certificate No. 4177, the claimant presents other grounds on which he seeks to charge the defendants with its payment to ■ him, qffcer they had paid it to one Cowdrey. He alleges that the printed indorsement over his name, in these words, “for value received, the within debt is assigned and transferred to N. A. Cowdrey, who is authorized to collect the same to his own use,” was placed there without his consent and fraudulently. But whether that was so or not, he does not show that the board of audit or the defendants knew or had any reason to suppose the fact so to be. He had himself led them to regard the matter otherwise, for he had put the certificate in the hands of his *364 ebosen assignee with the indorsement of his name thereon. The words printed above his signature had all the appearance of being authorized by him, and the assignment was certainly so regular in form, and so proper to be found over the signature, that the board of audit had no reason to suspect any fraud. As was further said by Mr. Justice Field in Cowdrey v. Yandenburg, above cited, the claimant having indorsed his name ■ in blank, “ virtually authorized the holder to transfer or dispose of the certificate by writing an absolute assignment over his signature.”
"When one sets afloat upon the business community a chose in action, payable to him, with his signature indorsed in blank on the back of it as though he had parted with his interest therein, and thus gives implied authority to the holder to fill up a transfer, he cannot complain if it drifts beyond his reach and out of his power to recall. He must take the consequences .of his own act. He puts his rights in the control of the bearer of the chose in action, and he must look to the persons with whom he deals for a misuse of the trust, if any, which he has conferred upon them. Innocent parties purchasing for full value, or the debtor paying in the ordinary course of business to the holder in such case, are not to be charged with a secret trust which the original creditor did not disclose before such, purchase or payment. As was still further said by Mr. Justice Field in Cowdrey v. Yandenburg, before cited:
“The principle is well settled that when the owner of property in any form clothes another with the apparent title or power of disposition, and third parties are thereby induced to deal with him, they shall be protected.”
But the claimant alleges that the board of audit and the defendants were notified of his claim of right and title to said certificate No. 4177 before allowance of the same to Cowdrey. This brings us to a consideration of the powers and duties of the board of audit, its relation to the District, and how far the latter as a quasi corporation was bound to take notice of the claimant’s controversies with parties to whom he had assigned his certificates, and what notice, if any, he gave to it.
The board of audit was a imculiar body, sui generis. While it was not a court nor exactly a board of arbitration, and had not the corporate powers and duties of the District, and was not the successor of the board of public w.orks, nor of any other *365 branch of the former government of tbe District, yet it was clothed, with great powers to examine and audit claims against the District, to issue for such as it allowed certificates which were to be redeemed by the sinking-fund commissioners in bonds, and the District officers had no control over it, and were powerless to defend the District against its acts. The circumstances under which this board was created are well known. The District had become involved in immense indebtedness for the great works undertaken with a view to the improvement of the capital of the nation on a grand scale far beyond the appropriations made therefor. The treasury of the District was without funds to meet the demands upon it, payment had stopped. and District securities were discredited in tbe market, and were sold or hypothecated with difficulty and at ruinous discounts.
At this juncture Congress, with its almost absolute power over this District, unrestrained by any local constitution as are the State legislatures within their jurisdiction, and very little by the Federal Constitution, came in and abolished the board of public works and all other branches of the government. It placed the corporate powers in commissioners, and established the board of audit for a limited period, to examine and allow all claims against the District which should be presented and proved, and whose certificates of allowance were to be redeemed and paid in bonds of the District to be issued by a board of sinking-fund commissioners. It was an entirely independent dody. The District as a corporation, by its Commissioners, had no control over the board, could not prevent its auditing, settling, and redeeming any claims which might be presented, and could not itself pay any.
The board of audit gave public notice to creditors of the District to present their claims, and ninety days were allowed by law for that purpose, and that time was further extended.
Of all this the claimant had actual or constructive notice. He had been a contractor with the board of public works and had tafeen its certificates of indebtedness to the extent of nearly $600,000, and he was bound to know the measure of relief which Congress, by a public act, had presented to the creditors of the District. He knew that the certificates which he had indorsed in blank were outstanding and might be presented to this board for redemption. It was his duty to see to it that the board of *366 audit was put in possession of the facts upon which he relied as an objection to the redemption of the certificates in favor of the bearer, who, he knew, had prima facie title to them. But he never gave the board any notice whatever that he claimed them, or that he objected to the payment of them to Blumenburg or his assignees, so far as the findings show.
The paper, now alleged by him to be notice, which he left with Magruder, was not addressed to anybody, was not filed with the District archives, and never came to the possession of the board. Neither the District Commissioners nor any other officers or the District are shown to have had any notice of it, except Magruder, who had ceased to be treasurer of the board of public works, and the board itself had been abolished.
It was the duty of the claimant to assert and prove his title to the certificates to the board of audit when or before they were presented for redemption.
The findings show that it does not appear whether or not he went before the board and presented his claims to the certificates or not. If he did present them, they were rejected by the board by payment to other parties, and so we have no jurisdiction of the matter, since Congress has provided that this court shall have no jurisdiction to consider claims rejected by the board of audit. If he did not appear and object to the payment of the certificates to other parties, when he might and ought to have done so, he is guilty of laches, and must be held to have allowed their payment in that manner without objection. In either case he has no cause of action.
On the whole the claimant’s case is really this and nothing more. He put his confidence in Blumenburg, intrusted him with power over his certificates by blank indorsements on the back of them, and borrowed money upon them. Blumenburg, it is alleged, abused his confidence, betrayed his trust, received payment of the certificates by himself or his assignees, and has not accounted and settled with the claimant. To him this was a great misfortune, but we can see no ground, in law or equity, why the District of Columbia should indemnify him for losses which thus came upon him through his own misplaced confidence in another.
The petition must be dismissed.
Nott, J., was not present at the trial of this case, and took no part in the decision.