OPINION.
Scofield, J.,
delivered the opinion of the court:
September 29, 1871, the claimants entered into a contract, No. 152, with the Board of Public Works for the improvement of Tenth street east. July 29, 1872, the contract was so extended as to include much additional work.
September 29, 1871, another contract, known as No. 157, was made by claiipants with the Board of Public Works for the improvement of Eighth street east.
Under these two contracts work was begun in 1871 and continued until about the beginning of 1873. About that time, in consequence of financial embarrassment, both of the claimants and the defendant, work was suspended.
Upon this work partial settlements and payments were made, but the accounts remained open and unadjusted until the final *210 settlement in March, 1875, before the Board of Audit, as hereinafter more fully stated.
Ey Act of Congress approved June 20, 1874, the Board of Public Works was abolished and the affairs of the District placed under the control of Commissioners. A Board of Audit was created, and clothed with authority “to examine and audit for settlement” all outstanding claims against the District. (Adams’s Case, 17 C. Cls. R.., 351.) A statement of all the work done was made out and finally audited by this Board, March 19, 1875.
The amount so found due the claimants was paid March 25, 1875.
After this settlement the Commissioners concluded to resume work upon these streets. But in the meanwhile a material change in the grade of the streets had been determined upon. In consequence of this change the work already done had to be torn up and done over and much new work undertaken. Under these changed conditions the contracts of the claimants were revived.
After the work under the old contracts, to wit, in 1871 — ’72, was done, but before the settlement by the Board of Audit as above stated, a new and increased scale of prices had been established by the Board of Public Works, which had become known as “Board rates.”
The claimants allege that for work done and materials furnished under the contract so revived they were to be paid at these “Board rates,” as presented in finding II.
The claimants immediately entered upon their work under the revived contracts, and completed it before the close of the year. Some considerable extra work was done on Eighth and Tenth streets, and a small amount on Sixth and Seventh streets, by order of the Commissioners, but not included in their contracts. Some partial payments were made as the work progressed, but before a final settlement was had the Board of Audit was abolished. As nobody was then authorized to audit the accounts, they have ever since' remained unsettled. The claimants state that the balance due them under the revived contracts, and for which they bring suit, amounts to $22,973.23. The defendant, not feeling bound by the action of the Board of Audit, taking up the case from the beginning in 1S71, following it through the administrations both of the Board of *211 Public Works and the Commissioners, correcting alleged mistakes and taking credit for overpayments, arrive at the conclusion that the claimants, so far from having an unsettled balance in their favor, are actually indebted to the defendant in the sum of $4,874.59.
In the consideration of these accounts some questions have been raised the settlement of Which materially affects the result.
First, whether the prices for work and materials shall be governed by Board rates as they existed in April, 1875, or by rates provided in the original contracts in 1871-’72.
The revived contracts were substantially new contracts en-grafted on the old. Owing to financial embarrassment, both of the claimants and the defendant, work had been suspended long before the new government came into operation, but the Commissioners issued an order for continued suspension. In the new arrangement, owing to the change of grade, the kind of work was considerably changed and the amount enlarged. The pay, in part, was changed from cash to District bonds, and new sureties were required and given.
It appears from findings II, III, and XIII that both parties understood at the time the contracts were renewed that Board rates were to be allowed.
It is said .that the recital in the new bonds, to 'wit, that the new undertaking was “ on the conditions and for the considerations ” of the old contracts., “ subject to the provisions of existing laws as to such contracts,V cannot be changed by parol understandings. It is true that parol evidence cannot be given to contradict written contracts, and that the legal construction of the recital in the bonds is apparently in conflict with the alleged parol understanding of the parties; but it should be noted that the bonds are not themselves the contracts. They are not signed by the defendant, and are signed by other parties besides the claiman ts. They are, however, acknowledgments by the claimants of what the contracts contained. But even if the recital in the bonds had been signed by both parties, so as to make complete contracts, it may well be doubted whether there is not sufficient ambiguity in the phraseology employed to admit of explanatory parol evidence.
The claimants now insist that the recital in the bonds adopting the old considerations, “ subject to the provisions of exist *212 ing laws as to sucli contracts,” was intended to mean subject to the orders of the Board of Public Works as well as laws proper. That appears by finding XIII to have been the understanding of both parties at the time, and compensation was afterwards so reckoned by defendant’s officers in making out the accounts.
It does not appear that all of this new arrangement was reduced to writing, as required by law, but the work was done and materials furnished at prices fair and reasonable, as shown in finding XIII. And it is well settled that in such cases a fair and reasonable compensation may be recovered. (Clark v. United States, 95 U. S. R., 539.) Therefore, in determining the amount of compensation for work done and materials furnished since April 26, 1875, the court has not been controlled by the rates named in the original contracts.
In arriving at this conclusion we have not found it necessary to pass upon the power, either of the Board of Public Works or of the Commissioners, to raise the compensation of contractors, by general orders or otherwise, above the rates provided in their several contracts. i As to that subject we here give, no opinion. This case is ruled by its own facts. “ Board rates” are referred to, not now by virtue of such orders, to enforce them against the defendant, but because, by understanding of the parties, they entered into the new agreement.
Second, whether the amount oí work and materials is to be determined solely by the measurement of defendant’s engineers.
By provision of the act of Congress under which this court takes jurisdiction of the case, such measurements are required to be received as prima facie evidence, but we hold in this case as we did in the Neitzey Case (17 C. Cls. R., 111), that they are not conclusive. Other evidence can be considered.
Following these rules, we find the amount due claimants for work done and materials furnished after. April 26, 1875, over and above all payments :
On Tenth street, as appears in finding V. $13,367 79
On Eighth street, as appears in finding X. 6,895 65
On Seventh street, as appears in finding XII. 281 52
And on Sixth street, as appears in finding XII. 484 35
Amounting in all to.$21,029 31
*213 The defendant’s counter-claims grow out of the settlement by the Board of Audit. That settlement took place in March, 1875, but the work settled for was done in 1871-’72. Between these two dates the Board of Public Works raised the scale of prices. Prior to this increase the old Board rates and the contract rates were alike. It appears by finding II that this increase in price was not intended to apply to claimants’ work already done. But the Board of Audit gave to this new scale of prices a retroactive effect, and settled claimants’ old accounts at the new rates. In this we think the Board made a mistake and exceeded their authority. They were not authorized to alter the contracts of the parties, but to 11 examine and audit for settlement ” accounts in accordance with them. Presuming, from the decision of the Supreme Court in District of Columbia v. Cluss (103 U. S. R., 705), as well as from our decisions in the Neitzey Case (17 C. Cls. R., 111), Adams’s Case (17 C. Cls. R., 351), and Brown’s Case (17 C. Cls. R., 420), that we are authorized to correct the mistakes of the Board of Audit, we have allowed, by way of counter-claim, the payments made in mistake by the defendant through the Board of Audit in excess of contract rates:
On Tenth street, as appears in finding VI.$6,126 48
And on Eighth street, as appears in finding XI.. 450 24
Amounting in all to.. 6,576 72
■‡ Deducting this sum from the whole amount of the claim allowed leaves due to the claimants the sum of $14,452.59.
♦ The judgment of the court is that the claimants recover from the defendant $14,452.59, due and payable to them Jan-tikry 1, 1876.