Peelle J.,
delivered the opinion of the court:
This action is founded upon the act June 22, 1880 (1 Supp. Rev. Stat., 562), known as the District of Columbia claims act, and grows out of two written contracts, Nos. 264 and 413, entered into by the claimant with the board of public works of said District, April 29 and July 23, 1872, as authorized bjr the act of February 21, 1871 (16 Stat. L., 427), and also upon verbal agreements entered into in 1874 and thereafter with the Commissioners of said District.
Prior to the execution of the contracts, to wit, September 26, 1871, the board of public works, by entry or memoranda on their records, had fixed the price of grading for old gravel *357 streets to a depth of 2 feet below the surface at iO cents per cubic yard; January 22, 1872, 30 cents per cubic yard for grading, including the hauling of the excavated material, not to exceed 200 feet, and for each additional 200 feet 1 cent additional per cubic yard beyond the first 200 feet.
And after the execution of said contracts, to wit, July 15, 1873, said board of public works, by like entiy, fixed the price of hauling excavated material at 1J cents per cubic yard for every 100 feet hauled over the first 200 feet since June 1, 1873; and thereafter, by like entry September 27, 1873, the board made said rate applicable to “all work done since Jan-' nary 1, 1873.”
Contract 264 was awarded to claimant by the board, as set forth in their records, at the rates so established, of which the claimant was notified; but by mistake in drafting the contract the rate of 40 cents for grading old graveled streets to a depth of 2 feet below the surface was omitted therefrom, and the board of public works and the claimant, by mutual mistake, executed the contract without observing said omission.
Though the rate of 40 cents for old graveled streets was fixed prior to the date of the execution of contract 413, and though the clerk'of the board notified claimant that said contract had been awarded to him at board rates, no entry was made by the board on their records to that effect, and as no mutual mistake is otherwise shown in that respect the claimant is not entitled to a re-formation of contract 413.
But as to contract 264, wherein the records of the board show that the same was awarded at board rates, and by mutual mistake the rate of 40 cents for old graveled streets was omitted therefrom, the claimant is entitled in that respect to a re-formation of his contract, and the same is decreed accordingly.
By the terms of the contracts aforesaid the claimant agreed to furnish at his own cost and expense all the necessary materials and labor, and among other things to grade the streets therein named, including North Carolina avenue, as stated in contract 264, at the price of 30 cents for each and every cubic yard of earth, sand, or gravel excavated and hauled a distance not exceeding 200 feet, and 1 cent additional per cubic yard for every 200 feet hauled beyond that distance, *358 and 40 cents per cubic yard for old graveled streets to a depth of 2 feet, as provided by said contract 264 so re-formed.
Although the rates thus fixed by the board, at 40 cents per cubic yard for old graveled streets and li cents per cubic yard for every 100 feet hauled over 200 feet, were not made a part of contract 413, the claimant was paid said rates for the work done thereunder as set forth in the counterclaim, and for the difference between the rates so paid and those specified in the original written contract the defendants interposed their counterclaim.
In the former trial of the case the controversy was as to the quantity and classification of the excavated material on North Carolina avenue, and as to whether the prices specified in the written contract should control. On the issues thus joined the.case was tried and findings of fact and conclusions of law thereon were filed, together with an opinion by the late Chief Justice Richardson, which resulted in a judgment on the counterclaim in favor of the District of Columbia for $11,264.58. (22 C. Cls. R., 366.)
On the question as to whether the court can “enforce claims founded upon these memoranda of the board of public works,” and whether the board can legally pay the rate so fixed, the court said: “In the numerous cases which have been before us under the District claims act we have uniformly and unanimously held otherwise.” The numerous authorities in support of that statement are cited.
It was further said in the opinion, “ when a statute provides how contracts by public officers shall be made, an entire or material departure from such requirements, though sufficient at common law to bind the parties, renders the proceedings void and of no effect as obligations on either side. It has been so decided by the Supreme Court in the South Boston Iron Company case (118 U. S., 37), affirming the judgment of this court (18 C. Cls. R., 165). In that case the statute passed upon by the court is in language much less mandatoiy than the one we are now considering, and there were offers and. acceptances in writing, signed separately bjr the parties, but the court held that they did not constitute a contract within the terms of the statute.”
In the findings filed at that time only 63,816 cubic yards of *359 grading was found to have been done on North Carolina avenue, although the four separate measurements made by the engineer officers of the District of the excavation therein as set forth in items 13, 15, 18, and 20 show that the claimant excavated 97,366 cubic yards, of which 61,573 cubic yards, as shown in finding vii, were excavated under the verbal agreement with the Commissioners of the District that the claimant should be paid the board rates therefor; and the agreement thus made was after the claimant had performed his original contract, 261, in excavating about 32,793 cubic yards to bring North Carolina avenue to its then established grade.
At the former hearing the claimant was denied the rate of 60 cents per cubic yard for the excavation of stiff clay on North Carolina avenue on the ground, as stated in the opinion of the court, that “the stiff clay, which is one kind of earth, rendered the grading in some places, no doubt, more difficult than it would have been had the earth been of a lighter material, but by the sixth article'of contract 261 it was agreed, among other things, that all loss arising out of the nature of the work to be done, or from any unforeseen obstructions or difficulties encountered in the prosecution of the same, should be sustained by the contractor.'1
That ruling was baseid on the finding then made that the stiff-clay excavation was done at the written contract rate of 30 cents per cubic yard, the contractor agreeing to sustain any unforeseen obstructions or difficulties encountered in the prosecution of the work; but as the excavation of the stiff clay was done under the verbal agreement with the Commissioners in 1871, long after the claimant had performed his original contract 261, he is entitled to the rate therefor then established and paid to other contractors for like work, as set forth in finding vm, which rate we find was reasonable and allow, as set forth in item 26, finding ix.
We have also added to the former finding of work done on North Carolina avenue the excavation under the sidewalks and carriageway, including the haul of the excavated material at li cents for every 100 feet hauled, as set forth in item 27, finding ix.
In respect to work done on D street, the original contract 261 required the excavation of about 1,267 cubic yards to *360 bring that street to the then established grade, which work was completed in August, 1872, as set forth in finding in.
Nearly two jmars later, and after the Commissioners had established the new grade for North Carolina avenue, as aforesaid, it became necessary to further grade D street to bring it to the new grade, and the claimant, with like verbal agreement with the Commissioners, performed said additional work, for which he was only allowed the rate of 1 cent per cubic yard for every 200 feet of haul, and he now claims under said verbal agreement ivith the Commissioners the board rate of li cents per cubic yard for every 100 feet of haul, which we allow, as set forth in item 5, finding ix.
And in addition thereto the claimant is entitled under the re-formation of his contract to the rate of 10 cents per cubic yard for the old gravel excavated in said street, as set forth in item 2, finding ix.
In regard to the work performed on Third street, the original contract 113 required, to bring said street to its then established grade, the excavation of about 7,078 cubic yards, as set forth in finding xiii, though some additional grading was done thereon under the written extensions of said contract at board rates, as therein provided for, which were allowed.
The change of the grade of North Carolina avenue also necessitated additional excavation in Third street to bring it to the new grade so established by the Commissioners in 1871, and under the direction of said Commissioners, and with the like verbal agreement as set forth in finding xiii, the claimant further excavated Third street, taking therefrom 22,218.83 cubic yards, for which he was, in the former findings, allowed but 1 cent per cubic yard for the haul of 200 feet, instead of the board rate of 1-]- cents per cubic yard agreed to be paid, and which he is now allowed, as, stated in item 21 of said finding xiii.
As we have denied the claimant’s prayer to re-form contract 413 in respect to the rate of 10 cents' for old graveled streets, for the reason set forth above, the claimant is allowed only the written-contract rate of 30 cents therefor, except where the written extension of said contract provided for board rates, in which case they are allowed, as indicated in the several findings.
*361 We have thus stated tbe differences between tbe findings heretofore filed and the findings now filed.
On the former trial the court proceeded upon the theory that all the work done was under the written contracts and the written extensions thereof, and upon that theory the law of the case is correctly stated in the opinion of the court, for the reason that both contracts were entered into by the claimant with the board of public works under the act of February 21, 1871, section 37 (16 Stat. L., 427), providing, among other things, that “ all contracts made by the said board of public works shall be in writing, and shall be signed bj7 the parties making the same, and a copy thereof shall be filed in the office of the secretary of the District; and said board of public works shall have no power to make contracts to bind said District for the payment of any sums of money except in pursuance of appropriations made by law, and not until such appropriations shall have been made.”
As that act required all contracts made b3r the board to be in writing, “signed by the parties making the same,” it follows that the board had no power to authorize'work to be done at prices fixed b}r them which were merely entered on the records of their office.
Where such prices were agreed to be paid, the act required that the contract embodying the same be reduced to writing and signed by the parties, and in several extensions of the contracts that course was pursued, as shown in findings vi and xi.
Under that act, as rightly construed by the court, “the board of public works was a body of limited jurisdiction, with their method of making contracts expressly defined and the contracts themselves limited to appropriations made by law.”
Hence the entry in the journal or other record of the board fixing rates could not affect the rates fixed in a written contract.
Such was the ruling by the Supreme Court in the case of Barnard v. District of Columbia (127 U. S., 409, 411), wherein it was said, “the entry in the journal of the board was no part of the contract with the claimant, nor could it in any respect control the construction or limit the effect of such contract. The board could not in-that way either make a new *362 contract or alter the one previously made so as to bind the District.”
And in the case of Eslin (29 C. Cls. R., 370, 393), in respect to the same question the court said:
“This question has been so fulty discussed in the recent opinion of the chief justice, in the case of Barnes v. District of Columbia (22 C. Cls. R., p. 366), that it is unnecessary to go over the ground again. We hold in these cases, as we held there, that these orders of the board of public works do not change the written contracts between the parties made before the orders were issued, and much less contracts made thereafter.
“The plaintiff coming into court for a final settlement with the District,- and having received public money to which he had no legal claim, must be held liable to refund it.”-
And so in that case it was held that the District could recover back the overpayment, as was held in the present case, to which ruling the court adheres in respect of the counterclaim, for the reason that the overpayments upon which the counterclaim is based were payments in excess of the rates fixed by the written contract under which the work was done.
But, as we now find that the additional work of excavation and consequent hauling were done by the claimant under the verbal agreement with the Commissioners of the District and the work accepted as set forth in the findings, the question is, Had the Commissioners the authority so to contract in respect thereto ?
By the provisions of the act of June 20, 1874, section 1 (Stat. L., 116), it was provided “that all provisions of law providing for an executive, for a secretary for the District, for a legislative assembly, for a board of public works, and for a Delegate in Congress in the District of Columbia are hereby repealed,” except as to the term of office of the Delegate then in Congress.
By section 2 of said act it was provided—
“That the President of the United States, by and with the advice and cons.ent of the Senate, is hereby authorized to appoint a commission, consisting of three persons, who shall, until otherwise provided by law, exercise all the power and authority now lawfully vested in the governor or board of public works of said District, except as hereinafter limited, *363 wbo shall be subject to all restrictions and limitations now imposed by law on said governor or board, * * * but said commission, in the exercise of such power or authority, shall make no contract, nor incur any obligation other than such contracts and obligations as may be necessary to the faithful administration of the valid laws enacted for the government of said District, to the execution of existing legal obligations and contracts, and to the protection or preservation of improvements existing or commenced and not completed at the time of the passage of this act.” * * *
Under the provisions of that act it would seem that the Commissioners of the District were limited in the exercise of their authority to the restrictions and limitations imposed by law on the governor and the board of public works, and they were thereby prohibited in the exercise of their power from making contracts or incurring any obligation otherwise than as there stated.
However, by the act of June 16, 1880 (21 Stat. L., 284), being the act providing for the settlement of all outstanding claims against the District of Columbia, and conferring jurisdiction on the Court of Claims to hear and determine the same, and for other purposes, it was, among other things, provided by section 1, “That the jurisdiction of the Court of Claims is hereby extended to, and it shall have original legal and equitable jurisdiction of—
“ All claims now existing against the District of Columbia arising out of contracts made by the late board of public works, and extension thereof made by the Commissioners of the District of Columbia;
“And such claims as have arisen out of contracts made by the District Commissioners since the passage of the act of June twentieth, eighteen hundred and seventy-four;
“ And of all claims for work done by the order or direction of the said Commissioners, and accepted by them for the use, purposes, or benefit of the said District of Columbia, and prior to the fourteenth day of March, eighteen hundred and seventjr-six;”
It will thus be observed that three classes of claims are recognized by the act conferring jurisdiction upon the court.
(1) All claims against the District arising out of contracts made by the board of public works, and extensions thereof made by the Commissioners of the District;
*364 (2) All claims arising out of contracts made by tbe Commissioners since the passage of the act of June 20, 1874, and
(3) All claims for work done by the order or direction of the said Commissioners, and accepted by them for the use, purposes, or benefit of the District prior to March 14,1876.
It will thus be seen that the Congress recognized claims for work done “by the order'or direction Of the said Commissioners,” where the work had been accepted by them for the use and benefit of said District prior to March 14, 1876.
And this view of the law is in harmony with the decision in the case of Campbell and Eslin v. The District of Columbia (18 C. Cls. R., 193), wherein it was held, in substance, that where contracts were made and work completed under them a subsequent order of the board of public works, establishing for such work higher prices, would not apply to work done under such preexisting contracts.
But where there was a revival of the contracts after the work under them had substantially been completed and such revived contracts appty to distinct work, subsequent to the raising of the rates for like work, a contractor was held to be entitled to the benefit of the increased rate for such subsequent work. (See authorities there cited.)
In the present case there does not appear to have been, in terms, a revival of the written contracts, but the verbal agreements on the part of the Commissioners of the District were that for the new or additional work done by the claimant he should be paid the rates therefor established and paid by the board of public works; so that whether the work be regarded as having been done under the contracts as revived or under the verbal agreement of the Commissioners, as set forth in findings, the claimant, in either event, is entitled, under the provisions of the act of 1880, to the benefit of the rates so established and promised to be paid for the new or additional work performed by him.
Therefore the claimant is entitled to recover on the whole case, after deducting the amount heretofore paid him from the amount shown by the findings to be due, less the counterclaim in favor of the defendants for §13,039.79, the sum of §23,694.47, for which latter amount judgment will be entered, and of which judgment there shall be paid to Samuel J. Ritchie, *365 assignee, as agreed by s&id claimant and which is hereby ordered, the sum of twelve thousand dollars (<5>12,000).
The judgment heroin rendered against the District of Columbia is due and payable March 1, 1876, within the meaning of the provisions of section 6 of the act of June 16,1880, chapter 243.